JANET LEIGH *vs.* BOARD OF REGISTRATION IN NURSING.

Suffolk. January 9, 1987. — April 8, 1987.

Present: HENNESSEY, C.J., LIACOS, NOLAN, & O'CONNOR, JJ.

*Board of Registration in Nursing. Nurse. Midwife. Constitutional Law,*
Equal protection of laws, Privacy, Regulation. *Due Process of Law,*
Pregnant women. *Statute,* Construction. *Sherman Antitrust Act. In-*
*terstate Commerce.*

General Laws c. 112, § 80C, and regulations thereunder, prohibiting nurses
and nurse midwives from attending home births without the authorization
of the Board of Registration in Nursing, while not similarly restricting
lay midwives who are not licensed nurses, did not violate the require-
ments of equal protection of the laws. [560-561]

On appeal of a decision of the Board of Registration in Nursing suspending
the license of a registered nurse on the ground that her practice of
midwifery without the board's authorization was in violation of G. L.
c. 112, § 80C, and regulations thereunder, this court, upon consideration
of the nurse's contention that § 80C violates the "fundamental right" of
a mother to choose where she will give birth and who will attend her,
held that the statute did not interfere with any fundamental right estab-
lished by *Roe* v. *Wade,* 410 U.S. 113, 165 (1973), and its progeny.
[561-562]

The requirement of G. L. c. 112, § 80C, and regulations thereunder, that
nurses who practice in the "expanded role" of midwife be licensed by
the Board of Registration in Nursing and practice in a licensed facility
as part of a health care team, was rationally related to a legitimate
governmental objective of establishing the safest possible condition for
all births attended by nurses and, thus, infringed no substantive due
process rights of a mother who may wish to give birth at home and be
attended by a nurse midwife. [562-563]

General Laws c. 112, § 80C, and regulations thereunder, prohibiting nurses
and nurse midwives from attending home births without the authorization
of the Board of Registration in Nursing, did not create an illegal restraint
of trade in violation of 15 U.S.C. §§ 1 (1982) et seq., the Sherman
Antitrust Act. [563-564]

This court declined to interpret art. 6 of the Massachusetts Declaration of
Rights to create a State antitrust cause of action. [564]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on February 23, 1984.

After review by this court, 395 Mass. 670 (1985), and remand for further proceedings before the Board of Registration in Nursing, the case was reported by *Wilkins, J.*

*Peter A. Belmonte* for the plaintiff.

*Cheryl L. Conner,* Assistant Attorney General, for Board of Registration in Nursing.

*Marjorie Heins & Joan Rachlin,* for Civil Liberties Union Foundation & others, amici curiae, submitted a brief.

NOLAN, J. This case is here for the second time. In *Leigh v. Board of Registration in Nursing (Leigh I),* 395 Mass. 670, 685 (1985), we remanded the case to the Board of Registration in Nursing (board) to reconsider its decision suspending Leigh's license to practice as a registered nurse. On remand, the board again suspended Leigh for practicing midwifery in violation of G. L. c. 112, § 80C (1984 ed.), and the board's regulations promulgated thereunder at 244 Code Mass. Regs. §§ 4.00 et seq. (1980). The board concluded that the violations constituted "gross misconduct in the practice of nursing." Leigh appealed to a single justice of this court who reserved decision and reported the case to the full court. We conclude that the board's decision should be upheld.

The facts that give rise to this dispute are set out in *Leigh I, supra* at 672-675. We recite only those additional facts which are pertinent to this appeal. By her own admission, Leigh is a professional midwife who attends women at normal, uncomplicated, home births. The board, by authority of G. L. c. 112, § 80B, and G. L. c. 30A, § 2 (1984 ed.), regulates "nurses practicing in the expanding role." 244 Code Mass. Regs. § 4.02. One such expanded role regulated by the board is that of "Nurse Midwife." See 244 Code Mass. Regs. § 4.11(1). The board's regulations prescribe certain certification requirements for those nurses who wish to practice in the expanded role of nurse midwife. 244 Code Mass. Regs. §§ 4.13, 4.24. Leigh is not certified by the board as a nurse midwife. She contends that, although she is a nurse, she practices as a lay midwife and is not subject to the board's regulations. There are no regulations governing lay midwives. Leigh also challenges G. L. c. 112, § 80C, and the implementing regulations

as unconstitutional and as an illegal restraint of trade. We reject these arguments.

1. *The board's decision on remand.* Leigh claims that the board's decision is clearly erroneous and not supported by substantial evidence. She also argues that the decision violates her right to due process guaranteed by the United States and Massachusetts Constitutions. We perceive no error in our rejection of these claims in *Leigh I,* and so we need not reconsider them now. *New England Merchants Nat'l Bank* v. *Old Colony Trust Co.,* 385 Mass. 24, 26 (1982).

a. *Equal protection.* Leigh claims that the statute creates unconstitutional classifications because it prohibits nurses and nurse midwives from attending home births but does not similarly restrict lay midwives. In addressing this claim, the court must determine whether the classifications made by the statute and implementing regulations rationally further a legitimate State purpose. *Commonwealth* v. *B & W Transp., Inc.,* 388 Mass. 799, 803, appeal dismissed, 464 U.S. 957 (1983). Although persons challenging the constitutionality of the statute and regulations may introduce evidence in support of their claim that the classification is irrational, they will not prevail if the question of the classification's rationality is at least debatable in view of the evidence. *Id.* at 803-804. It is at least debatable that deliveries in hospitals and birthing centers are safer than home births. Although we recognize that home births are safe in many circumstances, we also note that, in many other cases, back-up assistance and emergency facilities must be immediately available. The Legislature has expressed its preference that births attended by nonphysicians take place in licensed facilities with the assistance of certified nurse midwives. This legitimate, articulated State purpose supports the distinction made between lay and nurse midwives. The fact that the Legislature has not enacted legislation regulating lay midwives does not render the statute regulating nurse midwives unconstitutional. The equal protection clause does not require the government to choose between attacking every aspect of a problem or not attacking it at all. *McDonald* v. *Election Comm'rs of Chicago,* 394 U.S. 802, 811 (1969). Moreover,

the distinction drawn between lay and nurse midwives is justified because the public expects a nurse to have undergone a higher level of training than a lay midwife. The State has a legitimate purpose in assuring a minimal level of training and competence in nurses licensed by the board so that consumers may rely on the board certification in making informed decisions about health care. The regulatory scheme requiring all nurses who practice as midwives to be board certified rationally furthers this purpose. We conclude that neither G. L. c. 112, § 80C, nor its implementing regulations deprive the plaintiff of her constitutional right to equal protection of the laws.

b. *Leigh's due process claim on behalf of pregnant women.* Leigh renews her argument made in *Leigh I, supra,* that a mother has a fundamental, constitutional right to choose where she will give birth and who will attend her.[1] She contends that this right comes within the right of privacy in matters relating to family life and procreation recognized in *Cleveland Bd. of Educ.* v. *LaFleur,* 414 U.S. 632 (1974), *Roe* v. *Wade,* 410 U.S. 113 (1973), *Griswold* v. *Connecticut,* 381 U.S. 479 (1965), and *Skinner* v. *Oklahoma,* 316 U.S. 535 (1942). Leigh also argues that she has standing to raise the due process rights of the pregnant women with whom she has a professional relationship. See *Eisenstadt* v. *Baird,* 405 U.S. 438, 443-446 (1972); *Griswold* v. *Connecticut, supra* at 481. We agree that Leigh has adequate incentive to assess the rights of her clients. We recognize that her clients' ability to choose where they will give birth and who will attend them will be affected by the outcome of this litigation.

In support of Leigh's position, the amicus curiae attempts to analogize the instant case to cases such as *Akron* v. *Akron Center for Reproductive Health, Inc.,* 462 U.S. 416 (1983), where the Supreme Court invalidated a local ordinance requiring all second trimester abortions to take place in hospitals because the ordinance "unreasonably infringe[d] upon a

---

[1] Leigh does not claim that the Massachusetts Constitution guarantees such a right, and we do not consider the question.

woman's constitutional right." *Id.* at 438-439. The analogy to *Akron,* however, is inapposite. The right to privacy which protects a woman's choice to have an abortion has never been interpreted to guarantee a woman the right to choose the manner and circumstances in which her baby is born. In fact, the Supreme Court has recognized that from the point of viability, the State has a legitimate interest in protecting the life and well-being of an unborn child. *Roe* v. *Wade,* 410 U.S. 113, 165 (1973). After the point of viability a woman's freedom to choose must yield to the State's legitimate interest in protecting the health and safety of both the child and mother. *Id.* The statute and the regulations challenged here were adopted precisely to protect this interest. The statute does not require women to give birth in a hospital, nor does it force women to obtain medical treatment. The statute simply requires nurses who practice in the expanded role of midwife to be licensed and to practice in a licensed facility as part of a health care team. The statute does not interfere with any "fundamental right" established by *Roe* and its progeny. See *Bowland* v. *Municipal Court,* 18 Cal. 3d 479, 495 (1976).[2]

Since no fundamental right is implicated, the statute must stand if it bears a substantial relation to the public health and safety. See *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing,* 379 Mass. 368, 373 (1979). On the record before us, we are not prepared to say that the Legislature has chosen an irrational method to further its legitimate objective of health and safety. Leigh contends that home births attended by nurse midwives are safer than home births attended by lay midwives who are currently

[2] The statute upheld in *Bowland* allowed lay midwives to attend home births if they were licensed. Although the statute here regulates nurse midwives and prevents them from attending home births, the plaintiff's argument in the two cases is similar. In *Bowland, supra* at 495, the court acknowledged that delivery was safer with an unlicensed midwife attending than with no one attending. In the instant case, the plaintiff (a nurse unlicensed as a nurse midwife) argues that delivery is safer with a nurse attending than with a lay midwife attending. In both cases, the plaintiffs challenge the regulation because the regulatory scheme allows alternatives that are not as safe as the plaintiffs' illegal practices. For reasons stated below, we find this argument unpersuasive.

unregulated. Even if this is true, however, the statute and regulations represent a reasonable approach to establishing the safest possible conditions for all births attended by nurses. As we stated above, the regulatory scheme rationally furthers the State's legitimate purpose of setting minimum standards for nurses on which the public can rely. The fact that lay midwives remain unregulated does not alter this conclusion because the Legislature need not attack every aspect of a problem at once in the area of social welfare. See *Bowland, supra* at 495. The statute does not violate pregnant women's due process rights, and so Leigh's argument that home deliveries are as safe as hospital deliveries is more properly directed toward the Legislature.

2. *Illegal restraint of trade.* Leigh claims that G. L. c. 112, § 80C, creates an illegal restraint of trade under both Federal and State law. We do not agree. Leigh's Federal claim is that the statute violates § 1 of the Sherman Act, which provides that "[e]very contract, combination . . . or conspiracy, in restraint of trade or commerce among the several States . . . is declared to be illegal." 15 U.S.C. § 1 (1982). Even if we were to conclude that the challenged statute resulted in a restraint on interstate commerce, Leigh's argument would fail because actions of a State are exempt from the operation of the antitrust laws. This long-standing doctrine was recognized in *Parker* v. *Brown,* 317 U.S. 341, 350-351 (1943), and recently affirmed in *Hoover* v. *Ronwin,* 466 U.S. 558, 568 (1984). In *Hoover,* the Court concluded that actions taken by the Arizona bar examiners constituted State action and were, therefore, immune from Sherman Act liability. *Id*. at 573-574. The State need not act wisely to be exempt from antitrust liability. The only requirement is that the action be that of a State acting as a sovereign. *Id*. at 574.

Although not every State legislative utterance will qualify automatically as a "sovereign" act, *Corey* v. *Look,* 641 F.2d 32, 37 n.7 (1st Cir. 1981), citing *Goldfarb* v. *Virginia State Bar,* 421 U.S. 773, 791 (1975), legislation will qualify as a sovereign act if the alleged restraint is necessary to the successful operation of the legislative scheme. *Id*. The "restraint" here, that nurses must be certified to practice as midwives, is

necessary for the operation of the legislative scheme. See G. L. c. 112, § 80C. We conclude that the actions of the Legislature and of the board were sovereign actions of the State exempt from antitrust liability.

Leigh also claims that art. 6 of the Massachusetts Declaration of Rights[3] creates a State antitrust cause of action. Leigh's interpretation is not supported by authority. Indeed, Leigh cites no judicial authority supporting her interpretation of this constitutional provision. Article 6 of the Declaration of Rights concerns hereditary titles and offices. *Sheridan* v. *Gardner,* 347 Mass. 8, 15 (1964). It does not impose a constitutional prohibition on the conferral of benefits to individuals where the public is served. See *Opinion of the Justices,* 354 Mass. 799, 803 (1968). We have never interpreted art. 6 to create a State antitrust cause of action, and we decline to do so today.

The case is remanded to the Supreme Judicial Court for the county of Suffolk, where a judgment shall enter affirming the decision of the board suspending Leigh's license to practice as a registered nurse.

*So ordered.*

---

[3] "No man, nor corporation, or association of men, have any other title to obtain advantages, or particular and exclusive privileges, distinct from those of the community, than what arises from the consideration of services rendered to the public; and this title being in nature neither hereditary, nor transmissible to children, or descendants, or relations by blood, the idea of a man born a magistrate, lawgiver, or judge, is absurd and unnatural."