# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-3027
_____

Heather Swanson; Oneida Health, LLC,

*Plaintiffs - Appellants*,

v.

Michael Hilgers, in his official capacity as the Attorney General of the State of Nebraska; Ashley Newmyer, in her official capacity as the Interim Director of the Division of Public Health for the Nebraska Department of Health and Human Services[1],

*Defendants - Appellees*.
_____

Appeal from United States District Court
for the District of Nebraska - Lincoln
_____

Submitted: May 15, 2025
Filed: August 22, 2025
_____

Before COLLOTON, Chief Judge, SMITH and SHEPHERD, Circuit Judges.
_____

---

[1]Ashley Newmyer is automatically substituted for her predecessor under Federal Rule of Appellate Procedure 43(c)(2).

COLLOTON, Chief Judge.

Heather Swanson, a board-certified nurse midwife, brought this action alleging that Nebraska state officials violated her constitutional rights and rights of her prospective patients through laws restricting the practice of midwifery. The district court[2] dismissed Swanson's first-party claims on the merits and dismissed her claims on behalf of prospective patients for lack of standing. Swanson appeals, and we affirm.

I.

The Nebraska Legislature passed the Nebraska Certified Nurse Midwifery Practice Act in 1984 "to safeguard public life, health, safety, and welfare, to assure the highest degree of professional conduct by practitioners of certified nurse midwifery, and to insure the availability of high quality midwifery services to persons desiring such services." Neb. Rev. Stat. § 38-602. The Act requires that midwives perform their services (1) under the supervision of a licensed physician and under a "practice agreement," and (2) only in an authorized medical facility, and not in attendance at a home birth. *Id.* § 38-613. A "practice agreement" with a licensed physician specifies the medical functions to be performed by the midwife and limits where she may perform those services. *Id.* § 38-609. Midwives who violate the ban are subject to potential fines and criminal prosecution. Neb. Rev. Stat. §§ 38-196, -1,118, -1,124.

Heather Swanson is a certified nurse midwife who seeks to provide home birth services for women in Nebraska. Swanson says that she has been constrained to "turn away many women who wished to experience a home birth for a variety of reasons."

---

[2]The Honorable Robert F. Rossiter, Jr., Chief Judge, United States District Court for the District of Nebraska.

Swanson sued the attorney general and public health director of the State of Nebraska in an effort to gain relief from the statute.

Swanson's complaint alleged that the Act violates the Due Process Clause of the Fourteenth Amendment by preventing Swanson from attending home births and by requiring her to maintain a practice agreement with a supervising physician. The complaint also asserts that the Act violates a fundamental due process right of Swanson's "prospective patients" to "choose the manner and circumstances of giving birth."

The district court dismissed the complaint on the ground that Swanson failed to state a claim for a violation of her own rights and lacked standing to vindicate the alleged rights of her prospective patients. We review a district court's grant of a motion to dismiss for failure to state a claim *de novo*, taking all facts alleged in the complaint as true. *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).

II.

Swanson argues that the challenged provisions impermissibly burden an alleged constitutional right to provide childbirth services. The regulations require Swanson to maintain a practice agreement with a physician. Such an agreement limits the settings where Swanson may practice midwifery and the medical functions that she may perform. Neb. Rev. Stat. § 38-609. Swanson may undertake only the functions authorized in a practice agreement under a physician's supervision, and she may not attend a home birth. *Id.* § 38-613. Swanson argues that these regulations are designed to further the economic interests of physicians and advance no interests in

health or safety. She also contends that the regulations undermine the health and safety of mothers and infants, because they limit the availability of medical services.

Health and welfare laws are entitled to a "strong presumption of validity" and "must be sustained if there is a rational basis on which the legislature could have thought it would serve legitimate state interests." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 301 (2022) (internal quotation omitted). State restrictions on the practice of a profession are likewise reviewed under a rational basis standard. *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 488 (1955).

The Act states a legislative purpose "to safeguard public life, health, safety, and welfare, to assure the highest degree of professional conduct by practitioners of certified nurse midwifery, and to insure the availability of high quality midwifery services to persons desiring such services." Neb. Rev. Stat. § 38-602. The legislature rationally could have believed that the Act would serve those legitimate interests. The risks involved with delivery of a newborn make it rational for a legislature to require that back-up assistance and emergency facilities be readily available. *See Leigh v. Bd. of Registration in Nursing*, 506 N.E.2d 91, 93 (Mass. 1987). The requirement that certified nurse midwives operate under a physician's supervision rationally furthers a legitimate state interest in ensuring that midwives safely perform the contemplated services. *Lange-Kessler v. Dep't of Educ. of the State of N.Y.*, 109 F.3d 137, 141-42 (2d Cir. 1997); *Sammon v. N.J. Bd. of Med. Exam'rs*, 66 F.3d 639, 646-47 (3d Cir. 1995); *Gorenc v. Klaassen*, 421 F. Supp. 3d 1131, 1160-61 (D. Kan. 2019).

There may be a robust policy debate over whether the statutory restrictions are optimal: Swanson argues that they actually narrow the health care market, reduce choice, and lead some women to undergo unassisted childbirth at home. But "[a] law supported by some rational basis does not offend the constitution merely because it is imperfect, mathematically imprecise, or results in some inequality." *Birchansky*

*v. Clabaugh*, 955 F.3d 751, 758 (8th Cir. 2020). The Constitution leaves the choice among rational alternatives to the legislature, and the district court properly granted the motion to dismiss on Swanson's claim alleging a violation of her rights.

III.

Swanson next maintains that she has third-party standing to vindicate the rights of her prospective patients. Generally, a plaintiff may assert only her own injury in fact and "cannot rest [her] claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). This rule is "grounded in Art. III limits on the jurisdiction of federal courts to actual cases and controversies." *New York v. Ferber*, 458 U.S. 747, 767 n. 20 (1982). Article III requires "that a plaintiff have a 'sufficiently concrete interest in the outcome of [the] suit to make it a case or controversy.'" *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955 n.5 (1984) (alteration in original) (quoting *Singleton v. Wulff*, 428 U.S. 106, 112 (1976)).

There are also prudential reasons for the doctrine. If a "claim is brought by someone other than one at whom the constitutional protection is aimed, the courts might be called upon to decide abstract questions of wide public significance" which should remain with "governmental institutions . . . more competent to address" them. *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (internal quotations omitted). The restriction on third-party standing "'frees the Court . . . from unnecessary pronouncement on constitutional issues'" and "assures the court that the issues before it will be concrete and sharply presented." *Joseph H. Munson Co.*, 467 U.S. at 955 (quoting *United States v. Raines*, 362 U.S. 17, 22 (1960)).

The Supreme Court has recognized a "limited" exception to this rule for a litigant who demonstrates (1) a close relationship to the third party and (2) a hindrance to the third party's ability to bring suit. *Kowalski*, 543 U.S. at 129-30. Swanson does not meet these criteria, so she may not assert the rights of her patients.

-5-

Swanson does not have a close relationship with "prospective patients" whom she has not yet met or treated. While "*existing*" relationships may be sufficient to confer third-party standing, "*hypothetical*" relationships with unknown claimants are not. *Id.* at 131. Nor are Swanson's prospective patients meaningfully hindered in asserting their own rights. A pregnant woman who seeks to challenge the statute likely has nearly the nine-month gestational period to address the issue, and a prospective mother may be able to raise the claim even earlier in anticipation of a future pregnancy. *See Sammon v. N.J. Bd. of Med. Examiners*, 66 F.3d 639, 643 (3d Cir. 1995). If more time were required, then the woman's claim would survive the end of pregnancy under an exception to the doctrine of mootness. *Roe v. Wade*, 410 U.S. 113, 125 (1973). Experience shows that women are in a position to assert their own rights related to pregnancy and childbirth. *See, e.g.*, *H. L. v. Matheson*, 450 U.S. 398, 400 (1981); *Williams v. Zbaraz*, 448 U.S. 358, 361 (1980); *Maher v. Roe*, 432 U.S. 464, 467 (1977); *Doe v. Bolton*, 410 U.S. 179, 188 (1973); *Spencer v. Se. Mo. Hosp.*, 452 F. Supp. 597, 597 (E.D. Mo. 1978); *Williams v. S.F. Unified Sch. Dist.*, 340 F. Supp. 438, 439 (N.D. Cal. 1972).

Swanson argues that even if she fails to demonstrate a close relationship and hindrance, the Supreme Court has "been quite forgiving with these criteria . . . 'when enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights.'" *Kowalski*, 543 U.S. at 130 (quoting *Warth*, 422 U.S. at 510); *see U.S. Dep't of Lab. v. Triplett*, 494 U.S. 715, 720 (1990); *Craig v. Boren*, 429 U.S. 190, 195 (1976); *Singleton*, 428 U.S. at 113-17 (plurality opinion); *Eisenstadt v. Baird*, 405 U.S. 438, 445-46 (1972); *Griswold v. Connecticut,* 381 U.S. 479, 481 (1965); *McGowan v. Maryland*, 366 U.S. 420, 429 (1961); *Barrows v. Jackson*, 346 U.S. 249, 252, 255-58 (1953). Even in the cited cases, however, the criteria still "have been satisfied" in the eyes of the Court. *Powers v. Ohio*, 499 U.S. 400, 411 (1991).

Swanson maintains that if the criteria were satisfied by abortion providers seeking to assert rights of prospective patients, *see June Med. Servs. L.L.C. v. Russo*, 591 U.S. 299, 318 (2020) (plurality opinion); *id*. at 354 n.4 (Roberts, C.J., concurring in the judgment), then it follows that she too has third-party standing. The difficulty with this contention is that the abortion cases "ignored the Court's third-party standing doctrine." *Dobbs*, 597 U.S. at 286-87. While the Supreme Court has not had occasion to revisit those decisions directly, *Dobbs* is a clear signal that a "forgiving" approach to third-party standing in abortion cases should not be extended. An early opinion in this area reasoned that a woman seeking an abortion has "[o]nly a few months, at the most" to assert a putative right, and that she may "be chilled from such assertion by a desire to protect the very privacy of her decision from the publicity of a court suit." *Singleton*, 428 U.S. at 117 (plurality opinion). By contrast, a woman seeking midwife services has a longer gestational period in which to press a claim, and she is unlikely to be deterred from disclosing a forthcoming birth (or she could proceed under a pseudonym as warranted). Particularly where the court cannot reliably know whether the interests of unidentified expectant mothers will align with the midwife's preferences on such matters as providing care without a supervising physician, it would be imprudent to extend the availability of third-party standing to this context.

*        *        *

The judgment of the district court is affirmed.

_____