NANCY L. WALDEN *vs*. BOARD OF REGISTRATION IN NURSING
& others.[1]

Suffolk. March 5, 1985. — June 26, 1985.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Constitutional Law*, Self-incrimination, Equal protection of laws, Taxation.
*Due Process of Law*, Regulation of economic activity. *License. Nurse.*

A registered nurse who, when submitting an application for renewal of her
   license to practice nursing, left unsigned the certification required by
   G. L. c. 62C, § 49A, to the effect that she had complied with the tax
   laws of the Commonwealth, with the result that her application was not
   acted upon but was returned to her by the Board of Registration in
   Nursing, failed to demonstrate that the certification requirement, as
   applied to her, had infringed upon her constitutional privilege against
   self-incrimination. [265-268]
An action challenging the constitutionality of the requirement of G. L.
   c. 62C, § 49A, that applicants for professional licenses certify under
   oath their compliance with the tax laws of the Commonwealth did not
   present the question whether the statute created such a compulsion to
   admit criminal conduct as would make applicable the protections pro-
   vided by the Fifth Amendment to the United States Constitution and
   art. 12 of the Massachusetts Declaration of Rights. [268-271]
The requirement of G. L. c. 62C, § 49A, that applicants for professional
   licenses certify under oath their compliance with the tax laws of the
   Commonwealth was rationally related to a legitimate governmental ob-
   jective and, thus, infringed no substantive due process rights of a nurse
   whose application for renewal of her license was not acted upon as a
   result of her declining to complete the certification. [271-272]
The requirement of G. L. c. 62C, § 49A, that applicants for professional
   licenses certify under oath their compliance with the tax laws of the
   Commonwealth created a classification rationally related to its legislative
   purpose and thus did not violate the equal protection rights of such
   applicants. [272-273]

---

[1] The Director of the Division of Registration (director), and the Commis-
sioner of Revenue (commissioner).

CIVIL ACTION commenced in the Superior Court Department on February 28, 1984.

The case was heard by *James D. McDaniel, Jr., J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Alan J. McDonald* for the plaintiff.

*Kathleen M. Bowers,* Assistant Attorney General, for the defendants.

*Donald K. Stern, Nelson W. Cunningham & Marjorie Heins,* for Civil Liberties Union of Massachusetts & others, amici curiae, submitted a brief.

*Milton F. Lunch & Arthur E. Schwartz,* of the District of Columbia, *& John B. Miller,* for National Society of Professional Engineers & another, amici curiae, submitted a brief.

WILKINS, J. The plaintiff's appeal raises constitutional challenges to the requirement of G. L. c. 62C, § 49A (1984 ed.), that each person applying to the Commonwealth for a license to conduct a profession, trade, or business must certify under oath her compliance with the tax laws of the Commonwealth.

The plaintiff has been a registered nurse since 1960. A condition of her employment is that she be licensed as a registered nurse. She relies exclusively on her income as a registered nurse to support herself. She would be committing a crime if she were to practice as a registered nurse in the Commonwealth without a license from the defendant Board of Registration in Nursing (board). G. L. c. 112, § 80.

In January, 1984, the board mailed to the plaintiff an application for license renewal which contained the following proposed certification:

> "Pursuant to M.G.L. Ch. 62C, Sec. 49A, I certify under the penalties of perjury that I, to my best knowledge and belief, have filed all state tax returns and paid all state taxes required under law.
>
> _____
>
>                              Signature of Individual"

The plaintiff, whose annual registration was to expire on March 3, 1984, did not sign and has been unwilling to sign the certifi-

cation. The board would not renew her license as a registered nurse unless she signed the certification. The board and the defendant director have an administrative practice of returning incomplete applications without issuing or renewing licenses and without keeping a record of those who file incomplete applications. The director has indicated that an application filed without a signed certification will be treated as incomplete and will be returned to the applicant.

The plaintiff commenced this action in the Superior Court on February 28, 1984, and her registration has been continued by interlocutory orders. The case was presented on a "stipulated record." The plaintiff challenged the constitutionality of the certification requirement on the grounds that (a) she was denied her right against self-incrimination under the State and Federal Constitutions, (b) she was denied due process of law and equal protection of the laws, and (c) G. L. c. 62C, § 49A, is a bill of attainder. See U.S. Const. art. 1, § 10, cl. 1.[2] The judge rejected each of these arguments and denied declaratory relief. The plaintiff appealed, and we allowed her application for direct appellate review. We agree with the judge's legal conclusions on the facts presented, but must reverse the judgment because an appropriate declaration of the plaintiff's constitutional rights should be entered. See *Cherkes* v. *Westport*, 393 Mass. 9, 12 (1984); *Boston* v. *Massachusetts Bay Transp. Auth.*, 373 Mass. 819, 829 (1977).

1. *Self-Incrimination.* The plaintiff has not shown that she has been denied her right against self-incrimination. She has neither filed an application for renewal nor asserted her privilege against self-incrimination in any document filed with a State agency. The plaintiff's argument fails because she does not demonstrate that, on her theory of the case, she is compelled to do anything incriminatory.

---

[2] The plaintiff makes no bill of attainder claim under the Constitution of the Commonwealth. See Constitution of the Commonwealth, Part 1, art. 25. The plaintiff has waived her Federal bill of attainder argument on this appeal. We do not consider it or other issues not argued by the plaintiff but advanced by amici curiae. As a general rule, we do not consider arguments for reversal of lower court action advanced only by an amicus curiae.

The plaintiff argues that she has only three alternatives under the certification requirement: (1) sign the certification and perhaps commit perjury, (2) submit no form and abandon her job and her profession, or (3) submit a renewal application leaving the certification blank. It is her view that, in the circumstances, the third option is the only one available to her and that her filing of an application with a blank certification would be incriminating. In a sense, the plaintiff is not compelled to do anything because she could decide to abandon her profession and file no renewal application. The threat of the loss of one's livelihood, however, is a powerful form of compulsion. See *Spevack* v. *Klein,* 385 U.S. 511, 516 (1967) (plurality opinion); *Garrity* v. *New Jersey,* 385 U.S. 493, 497 (1967). Thus, we accept, for the purposes of this case only, that, if the filing of a renewal application with the oath unsigned is incriminating (that is, if it would tend to identify her as a criminal or would present evidence that could be used against her in prosecuting a criminal proceeding against her), the plaintiff's Fifth Amendment and art. 12 rights would be denied. We note, however, that there would appear to be little, if any, compulsion to file such a form if the plaintiff knows that the filing of a blank certification is a futile act.

The plaintiff's claim that she would risk prosecution by filing an unsigned certification, thus identifying herself as one to be investigated for possible prosecution, fails on this record because the threat is not "real and appreciable." *Marchetti* v. *United States,* 390 U.S. 39, 48 (1968). Unsigned applications are simply returned to applicants as incomplete. Furthermore, the filing of an application with the oath unsigned is not such an admission of criminal conduct as to implicate a right against self-incrimination. Such self-identification has been held to implicate the Fifth Amendment only in a limited line of cases involving mandatory filings with government agencies where the focus of the requirement was against criminal activity. See *Leary* v. *United States,* 395 U.S. 6 (1969) (marihuana registration and tax); *Haynes* v. *United States,* 390 U.S. 85 (1968) (requirement that owners of illegal firearms must register and pay tax); *Grosso* v. *United States,* 390 U.S. 62 (1968) (require-

ment that gamblers must register and pay special tax); *Marchetti* v. *United States, supra* at 39 (same); *Albertson* v. *Subversive Activities Control Bd.,* 382 U.S. 70 (1965) (requirement that all members of Communist party register). In contrast, there is no Fifth Amendment right not to file an income tax return, even if the taxpayer believes it would be incriminatory. See *United States* v. *Sullivan,* 274 U.S. 259 (1927). See also *California* v. *Byers,* 402 U.S. 424 (1971) (plurality opinion) (driver of motor vehicle in an accident must stop and give his name and address). If, however, the defendants were to change their policy and begin to compile a list of those who filed unsigned oaths, the threat of prosecution arising from self-identification could become more substantial.

A Fifth Amendment challenge to a Federal statute which denied financial assistance to male students who should have registered for the draft under the Selective Service Act, but did not, was unsuccessful in *Selective Serv. Sys.* v. *Minnesota Pub. Interest Research Group,* 468 U.S. 841 (1984). The plaintiff students claimed that the Federal statute compelled them to incriminate themselves in violation of the Fifth Amendment. The Supreme Court ruled that there was no compulsion because no student was "compelled" to seek Federal financial aid. *Id.* at 856-857. Moreover, that Court concluded that, if a student who violated the law by not registering seasonably chose eventually to register for the draft, the statement made to his school concerning his draft registration compliance could not incriminate him because he was not required to disclose to his school whether his draft registration was timely or late. *Id.* at 857. The *Selective Serv. Sys.* opinion suggests that the Supreme Court might find no compulsion in the Commonwealth's requirement of filing a tax compliance certification with each application for license renewal, and indicates that there would be nothing incriminating in failing to file an application for license renewal or in filing an application with the certification blank.

We have assumed, without deciding, the existence of compulsion in an art. 12 sense in this case, but we see no self-incrimination in the filing of an application with the certification

left unsigned. Such an application admits to no crime. The plaintiff suggests no way in which the fact of such a filing could be used as evidence to convict her of a crime. As we have said, the prospect that such a filing would identify the plaintiff as a tax law violator is insignificant because the board returns incomplete renewal applications and maintains no record of unsigned certifications.

Although we have disposed of the plaintiff's self-incrimination argument as presented, we recognize that the certification requirement is a matter of some public importance, and that there are possible self-incrimination problems not advanced by the plaintiff. An applicant's alternatives may not be, as the plaintiff argues, to commit perjury, to file no application and abandon her profession, or to file a form with an unsigned certification. The fact that the relevant agency returns to an applicant any form submitted with the oath unsigned suggests that the alternative of submitting an unsigned oath is not really available. A more realistic third alternative may be to file tax returns late and to pay overdue taxes so that the applicant can sign the oath honestly. For many licensed persons the compulsion to cure past errors may be substantial because of the need, or at least the strong desire, of an applicant to carry on her trade or profession.

If the pressure to rectify past errors by filing overdue returns or by paying overdue tax obligations is as intense as we think it may be for some, an applicant could be under substantial pressure to take action that would tend to incriminate her. Perhaps, at least for Federal constitutional purposes, the privilege must be asserted in some way before it will be recognized in the circumstances. See *Selective Serv. Sys.* v. *Minnesota Pub. Interest Research Group, supra* at 858; *United States* v. *Sullivan,* 274 U.S. at 263-264. However, late filing and late payment of taxes create a real and appreciable hazard of incrimination and prosecution, unless, of course, the commissioner has authority to grant and does grant immunity from prosecution to persons acting late. The compulsion to admit criminal conduct in order to preserve one's right to engage in a chosen trade or profession, a constitutionally recognized right

(*Hampton* v. *Mow Sun Wong,* 426 U.S. 88, 102 n.23 [1976]), may well be stronger than the compulsion to register late for the draft (and admit a criminal act) in order to obtain Federal financial assistance for a college education. See *Selective Serv. Sys.* v. *Minnesota Pub. Interest Research Group, supra* at 857-858.

Indeed, it may be demonstrable that the oath requirement as implemented is directed against persons who have committed crimes under the tax laws, arguably a "highly selective group inherently suspect of criminal activities." *Albertson* v. *Subversive Activities Control Bd.,* 382 U.S. at 79. The statutory requirement that the applicant swear "that he has complied with all laws of the commonwealth relating to taxes," G. L. c. 62C, § 49A (*a*) (1984 ed.), calls for an assurance against negligent or good faith errors as well as against intentional misconduct.[3] Negligent errors would lead to civil penalties only (G. L. c. 62C, § 33), and the Federal privilege against self-incrimination reaches only criminal penalties. See *Minnesota* v. *Murphy,* 465 U.S. 420, 435 n.7 (1984); *Garner* v. *United States,* 424 U.S. 648, 655 (1976); *Attorney Gen.* v. *Colleton,* 387 Mass. 790, 794 (1982). See also *Emery's Case,* 107 Mass. 172, 180-181 (1871), as to art. 12 of the Declaration of Rights of the Constitution of the Commonwealth. The certification prescribed by the commissioner is considerably narrower in scope than the statute would allow, and, therefore, is fairer to the conscientious oath taker. The certification, however, is thereby directed more exclusively against criminal evasion of State tax laws such as those described in G. L. c. 62C, § 73.

If the oath requirement has as compulsive an effect on certain applicants as we suggest and is directed against criminal tax evaders, the circumstances may not be distinguishable in a meaningful way from those cases we noted earlier, in which the Supreme Court struck down statutes requiring the disclosure

---

[3] The oath suggested by the statute includes, for example, an assurance, to the best of the applicant's knowledge and belief, that she has made no negligent error (at least in her favor) in any tax return.

of information that would most likely reveal criminal conduct. See *Grosso* v. *United States,* 390 U.S. 62, 67 (1968); *Marchetti* v. *United States,* 390 U.S. 39, 50-51, 61 (1968); *Albertson* v. *Subversive Activities Control Bd.,* 382 U.S. 70, 79 (1965). Cf. *California* v. *Byers,* 402 U.S. 424, 431 (1971) (plurality opinion) (requirement of disclosure of name and address following a motor vehicle accident does not infringe Fifth Amendment rights because disclosure does not entail a sufficiently substantial risk of self-incrimination). In such a case, a direct judicial challenge to the oath requirement may be proper without requiring a prior claim of privilege on the form seeking a license. See *Garner* v. *United States,* 424 U.S. 648, 658 n.11 (1976). It may even be that an applicant would be under such compulsion that she could file new or amended tax returns and make late tax payments and successfully claim her privilege against self-incrimination in any subsequent prosecution relating to the late filing or late payment. See *Garrity* v. *New Jersey,* 385 U.S. 493, 500 (1967) (incriminating testimony given by police officers threatened with discharge if they were to assert the privilege, inadmissible against them in a subsequent criminal prosecution). But see *Garner* v. *United States, supra* at 665 n.21 (disclosure and concurrent claim of privilege not permissible).

This case has not been argued to us on the terms we have been discussing. Certain facts may not be as we have tentatively inferred them to be. The parties have not argued the question whether there is a compulsion to file returns or pay taxes late that makes certain Fifth Amendment and art. 12 principles applicable. If there is compulsion in some degree, it may be that the consequences under the broader protection of art. 12 (see *Attorney Gen.* v. *Colleton,* 387 Mass. 790, 796 [1982]; *Commonwealth* v. *Hughes,* 380 Mass. 583, 595, cert. denied, 449 U.S. 900 [1980]) will differ from those under the Fifth Amendment. Possible differences might include the extent to which and the manner in which an applicant would have to assert the protection of art. 12, in contrast to the Fifth Amendment, in order to receive the benefit of her art. 12 rights. We have no indication of the likelihood of prosecution of, or the

granting of immunity to, any person who under compulsion makes a late filing or a late tax payment. Some or all of these questions may be significant in the administration of G. L. c. 62C, § 49A, and the certification requirement. They are not, however, presented by the plaintiff's arguments in this case.

2. *Substantive Due Process.* We reject the plaintiff's argument that the certification requirement of G. L. c. 62C, § 49A, lacks a rational basis and thus denies her due process of law under the Fourteenth Amendment and the due process provisions of the Constitution of the Commonwealth. On this issue, the result is the same under Federal and State constitutional due process principles. See *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing,* 379 Mass. 368, 373 n.8 (1979). Although the plaintiff's right to work as a nurse is protected against deprivation without due process of law (*Hampton* v. *Mow Sun Wong,* 426 U.S. at 102 n.23; *Blue Hills Cemetery, Inc., supra* at 372), the "rational basis" standard, and not some stricter one, is applied to test the constitutionality of legislation affecting the right to work. See *Williamson* v. *Lee Optical of Okla., Inc.,* 348 U.S. 483, 488 (1955); *Pinnick* v. *Cleary,* 360 Mass. 1, 14 (1971); *Sperry & Hutchinson Co.* v. *Director of the Div. on the Necessaries of Life,* 307 Mass. 408, 418 (1940).

If the rationality of the certification requirement is to be determined by deciding whether it bears "a reasonable relation to any permissible object of legislation" (*Shell Oil Co.* v. *Revere,* 383 Mass. 682, 685 n.6 [1981], quoting *Marcoux* v. *Attorney Gen.,* 375 Mass. 63, 64 [1978]), it is apparent that § 49A rationally furthers the legitimate government goal of raising revenue and assuring that tax returns are filed. The plaintiff contends, however, that because occupational licensing is involved, § 49A must have a rational basis related to her profession or her practice of it. In short, she claims that the certification requirement has no connection with her competence to practice nursing. There is language in *Schware* v. *Board of Bar Examiners,* 353 U.S. 232, 239 (1957) ("any qualification [for admission to the bar] must have a

rational connection with the applicant's fitness or capacity to practice law") which tends to support the plaintiff's claim that the rational basis for regulatory legislation must relate to her competence to practice nursing. That language has not, however, been given the limiting effect on the rationality test which the plaintiff claims for it. Even if it had been, the fact that a licensee of the Commonwealth, at least a nurse, had knowingly failed to comply with the tax laws of the Commonwealth could be treated rationally as an anti-social act demonstrating unfitness to carry on a responsible profession in which adherence to other laws is required. See *Raymond* v. *Board of Registration in Medicine,* 387 Mass. 708, 713 (1982); *Levy* v. *Board of Registration & Discipline in Medicine,* 378 Mass. 519, 526-527 (1979). Such a conclusion, following solely from a failure to sign the oath, does not present a significant due process objection, require testing on a stricter standard than the rational basis test, or on these facts entitle the plaintiff to a hearing. See *Weinberger* v. *Salfi,* 422 U.S. 749, 771-773 (1975); *Malmed* v. *Thornburgh,* 621 F.2d 565, 576 (3d Cir.), cert. denied, 449 U.S. 955 (1980); *Trafelet* v. *Thompson,* 594 F.2d 623, 630 (7th Cir.), cert. denied, 444 U.S. 906 (1979); *Palmer* v. *Ticcione,* 576 F.2d 459, 463-464 (2d Cir. 1978), cert. denied, 440 U.S. 945 (1979).[4]

3. *Equal Protection of the Laws.* The plaintiff claims that she has been denied equal protection of the laws because licensees must declare their compliance with the tax laws of the Commonwealth while other persons need not. The difference in treatment is reasonably related to a legitimate public purpose

---

[4] The plaintiff's argument that, as a matter of procedural due process, she is entitled to a hearing at which the question of her competence to practice nursing would be determined is beside the point. The certification requirement forecloses any such scrutiny where she admits she has not signed the certification and filed it.

In other circumstances, perhaps a hearing will be constitutionally required, such as where there is a dispute as to what has been or should have been filed or paid, or as to the form of the certification or where an applicant cannot honestly sign the certificate and cannot cure any omission, perhaps because of a lack of funds or because an issue is in dispute with the commissioner.

and is thus permissible. See *Pinnick* v. *Cleary,* 360 Mass. 1, 27-28 (1971). Imposition of the certification requirement on one who must be worthy of receiving and holding a license from the Commonwealth is a reasonable classification. The Commonwealth is not obliged to license a person who has failed to carry out her civic duty concerning the filing of tax returns and the paying of taxes. The equal protection claim fails because the classification rationally relates to a legislative purpose. See *Shell Oil Co.* v. *Revere,* 383 Mass. 682, 690-691 (1981).

4. *Conclusion.* The plaintiff's specific challenges to the constitutionality of G. L. c. 62C, § 49A, are without merit on the facts presented. The judgment is reversed, as we have indicated above, so that an appropriate judgment declaring the constitutionality of § 49A as applied to the plaintiff on the facts of this case may be entered.

*So ordered.*