908 A.2d 1247

**William KNOCHE**

v.

**STATE of Maryland.**

**No. 574, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Oct. 11, 2006.

210

Frank E. Trock, Baltimore, for appellant.

Gerald Langbaum (John K. Barry, J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel MURPHY, C.J., EYLER, JAMES R. and Kenney, JJ.

KENNEY, J.

William Knoche appeals the Circuit Court for Baltimore County's grant of a declaratory judgment upholding the constitutionality of Maryland Code (1981, 2005 Repl.Vol.), § 1–213 of the Health Occupation Article ("Health Occ.").[1] Knoche

---

1. Our opinion was filed on August 4, 2006. Appellee filed a request to publish the opinion and a Motion for Reconsideration of Award of Costs, both of which are hereby granted.

poses two questions for our review,[2] which we have reworded and recast as follows:

I. Was Knoche denied procedural due process under Health Occ. § 1–213 because he was not provided notice and hearing prior to the non-renewal of his State issued dental license?

II. Was Knoche denied substantive due process under Health Occ. § 1–213 because the statute does not rationally relate to the State's interest in assuring quality dental care of its citizens?

III. Does the retroactive application of Health Occ. § 1–213, which requires, among other things, that an undisputed income tax obligation be paid before a dental license will be renewed, constitute an ex post facto law in violation of the Constitution of the United States and Article 17 of the Maryland Declaration of Rights?

For the following reasons, we answer each of those questions in the negative, and shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL HISTORY

The facts are undisputed. Dr. William Knoche, a practicing dentist, has not filed a Maryland income tax return since 1980. On September 4, 1990, the Comptroller of the Treasury, Income Tax Division, assessed Knoche's tax liability, including

---

2. Knoche presented the following:
   1. Whether the trial judge committed reversible error by finding that Health Occupations Article 1–213 (as enacted by House Bill 935) which provides that a license to practice dentistry may not be renewed unless the applicant has paid all "undisputed taxes" or provided for payment in a manner satisfactorily to the State of Maryland is constitutional on its face and that its provisions do not deny due process of law to [Knoche.]
   2. Whether the trial judge committed reversible error by finding that Health Occupations Article § 1–213 (as enacted by House Bill 935) which provides that a license to practice dentistry may not be renewed unless the applicant has paid all "undisputed taxes" or provided for payment in a manner satisfactorily to the State of Maryland is constitutional as applied to [Knoche] and that its provisions does not deny due process of law to [Knoche.]

interest and penalties, for calendar years 1980, 1981, and 1982 at $14,313.68, $19,403.08, and $21,937.44, respectively. On February 14, 1991, the Income Tax Division issued Knoche assessments for calendar years 1983–1989. The assessments, including interest and penalties, ranged from $17,359.43 for the 1983 calendar year to $14,482.56 for the 1989 calendar year.

The assessment notices indicated that the assessments would become final within thirty days unless Knoche filed either a proper tax return or an appeal to the Maryland Tax Court. Knoche neither filed returns for the years 1980–1989 nor appealed the assessments to the Maryland Tax Court. By operation of Maryland Code (1988), § 13–805 of the Tax General Article ("Tax–Gen."), Knoche's unpaid tax assessment constituted a lien in favor of the State. Pursuant to Tax–Gen. § 13–807, the Income Tax Division filed the lien with the Circuit Court for Baltimore County, which entered the lien in the amount of $166,591.91 in the judgment docket of the court on April 20, 1992.

In 2003, the General Assembly enacted H.B. 935, the Budget Reconciliation and Financing Act of 2003. Its purpose, among others, was to ensure tax compliance by not renewing certain State licenses if the license holders had not paid their taxes. *See* 2003 Laws of Maryland ch. 203 § 24. This requirement applied to licenses issued under Maryland Code § 1–204 of the Business Occupations and Professions Article, § 1–210 of the Business Regulation Article, § 1–203 of the Environment Article, § 1–213 of the Health Occupations Article, § 1–402 of the Natural Resources Article, § 1–205 of the Tax–General Article, and § 1–103 of the Transportation Article. The law went into effect July 1, 2003.

Licenses subject to Health Occ. § 1–213 include dental licences. Relevant to this appeal, Health Occ. § 1–213 provides:

(a) *In general.*—A license or permit is considered renewed for purposes of this section if the license or permit issued by a unit of State government to a person for the period

immediately following a period for which the person previously possessed the same or a substantially similar license. (b) *Verification of payment of taxes or unemployment insurance contributions.*—Before any license or permit may be renewed under this article, the issuing authority shall verify through the office of the Comptroller that the applicant has paid all undisputed taxes and unemployment insurance contributions payable to the Comptroller or the Secretary of Labor, Licensing, and Regulation or that the applicant has provided for payment in a manner satisfactory to the unit responsible for collection.

In July 2004, Knoche received a letter from the Maryland State Board of Dental Examiners ("the Board"), indicating that his dental license would not be renewed because of his outstanding tax liability. In August 2004, Knoche received a cease and desist order from the Board, precluding him from practicing dentistry in Maryland until the Comptroller certified that he had paid all outstanding taxes or had otherwise provided for payment in a satisfactory manner. On August 4, 2004, Knoche requested a hearing from the Comptroller. The Comptroller responded on August 11, 2004, that no hearing process was available.

On November 19, 2004, Knoche filed a complaint for declaratory judgment in the Circuit Court for Baltimore County, asserting that H.B. 935, codified at Health Occ. § 1–213,[3] was unconstitutional on its face and as applied to him because he was denied "the right to work in his chosen profession" without being afforded a hearing. The State filed a motion to dismiss, or in the alternative, a motion for summary judgment on January 3, 2005. Among other things, the State maintained that Health Occ. § 1–234 constituted a permissible exercise of the State's right to protect and preserve the public health. It stated that the statute did not violate due process because anyone whose license was subject to non-renewal,

---

3. In his complaint for declaratory judgment and memorandum in support thereof, Knoche referenced § 1–204 of the Business Occupations and Professions Article.

including Knoche, was afforded the opportunity to dispute his or her tax obligations in the Maryland Tax Court.

Attached as exhibits to the State's motion were the affidavits of Patricia Baker, assistant manager of the Annapolis Collection Office of the Compliance Division of the Comptroller, and John Hearn, Deputy Clerk of the Maryland Tax Court. In her affidavit, Baker explained that Knoche had not filed a tax return since at least 1980, and that, despite being assessed penalties and interest for tax years 1980–1989, he had not made any payments on his assessed tax liability. In his affidavit, Hearn stated that he had reviewed the docket index and determined that Knoche had not appealed his tax assessments to the Tax Court. Therefore, the State maintained that appellant had effectively waived any right he had to an administrative hearing.

On January 28, 2005, Knoche filed an opposition to the State's motion. In addition, Knoche filed a cross-motion for summary judgment.

Following argument on the cross-motions, the circuit court granted summary judgment in favor of the State. On April 11, 2005, the court issued a declaratory judgment, upholding the constitutionality of Health Occ. § 1–213, "on its face and as applied." This timely appeal followed.

## STANDARD OF REVIEW

Under Maryland Rule 2–501(f), a court "shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." "The trial court will not determine any disputed facts, but rather makes a ruling as a matter of law. The standard of appellate review, therefore, is whether the trial court was legally correct." *Williams v. Mayor & City Council of Baltimore*, 359 Md. 101, 114, 753 A.2d 41 (2000). We review "a trial court's grant of a motion for summary judgment *de novo.*" *Remsburg v. Montgomery*, 376 Md. 568, 579, 831 A.2d 18 (2003). *See also Todd*

v. *Mass Trans. Admin.*, 373 Md. 149, 154, 816 A.2d 930 (2003); *Beyer v. Morgan State Univ.*, 369 Md. 335, 359, 800 A.2d 707 (2002); *Schmerling v. Injured Workers' Ins. Fund*, 368 Md. 434, 443, 795 A.2d 715 (2002).

In our review, we determine first whether a genuine dispute of material fact exists, "and only where such dispute is absent will we proceed to review determinations of law." *Remsburg*, 376 Md. at 579, 831 A.2d 18. "The facts properly before the court, and any reasonable inferences that may be drawn from them," are construed "in the light most favorable to the non-moving party." *Id.* at 579–80, 831 A.2d 18. "We generally 'uphold the grant of a summary judgment only on the grounds relied on by the trial court.'" *Nationwide Mut. Ins. Co. v. Wilson*, 167 Md.App. 527, 535, 893 A.2d 1177, *cert. granted*, 393 Md. 242, 900 A.2d 749 (2006) quoting *Mitchell v. Baltimore Sun Co.*, 164 Md.App. 497, 508, 883 A.2d 1008 (2005) (quoting *Ashton v. Brown*, 339 Md. 70, 80, 660 A.2d 447 (1995)).

## DISCUSSION

### I. Procedural Due Process

■ Knoche contends that the circuit court erred in concluding that Health Occ. § 1–213 does not violate constitutionally protected rights to procedural due process, both facially and as applied, because it does not provide for a hearing before an individual may be deprived of his or her professional license.

The Fourteenth Amendment provides, in pertinent part, "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. Likewise, Article 24 of the Maryland Declaration of Rights provides that "no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." *See also Pitsenberger v. Pitsenberger*, 287 Md. 20, 27, 410 A.2d 1052 (1980) ("[I]t should be pointed

out that Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment of the United States Constitution have the same meaning, and that Supreme Court interpretations of the Fourteenth Amendment function as authority for interpretation of Article 24.").

■ It is well settled that, in order to satisfy the requirements of procedural due process, the State must provide notice and a hearing prior to depriving a person of life, liberty, or property. *Dusenbery v. United States,* 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ("[W]e have determined that individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'") (quoting *United States v. James Daniel Good Real Prop.,* 510 U.S. 43, 48, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993)).

The State does not dispute that Health Occ. § 1–213 does not provide for a hearing; that Knoche would otherwise be entitled to a hearing before the Board prior to his license being revoked; or that a license to practice dentistry, like a license to practice medicine, is a property interest protected by the due process clause of the Fourteenth Amendment and Article 24. Rather, the State claims that Knoche was provided with notice and an opportunity to be heard in the Maryland Tax Court in regard to his tax liability. Because Health Occ. § 1–213 only applies where the tax and the unemployment insurance contribution liabilities are "undisputed," and Knoche did not dispute his tax obligation in the Tax Court, the State contends that Knoche was not deprived of his rights to procedural due process. We agree.

Maryland Code (1988, 2004 Repl.Vol.), § 13–508 of the Tax General Article provides that, when a person or governmental agency disputes a tax assessment, they may file, within thirty days of the issuance of the assessment, an application of revision of the assessment with the "tax collector," [4] or if the

---

**4.** Tax General § 13–101(c) defines "tax collector" as follows:
(1) "Tax collector" means the person or governmental unit responsible for collecting a tax:

assessment is paid, a claim for refund. When a person or governmental agency does not dispute the assessment or seek a refund within thirty days, the assessment becomes final. Tax–Gen. § 13–508(b). If an application for revision or a claim for refund is filed, however, the Comptroller or an employee of that office must "hold an informal hearing" on the application or claim. Following the hearing, the Comptroller or an employee of that office must act on the application or claim, which may include assessing additional taxes, penalties, and interest. Tax–Gen. § 13–508(c). A notice of final determination is then mailed to the party. *Id.*

Where the person or governmental agency is aggrieved by the action in the final notice, within thirty days of the mailing of the final notice, they may appeal to the Maryland Tax Court, "an independent administrative unit of the State government." Tax–Gen. § 3–102; § 13–510. Proceedings in the Tax Court are governed by Tax–Gen. §§ 13–514 to 13–529, which provide a party with the procedural rights to a prompt hearing, to appear before the Tax Court *pro se* or represented by counsel, to introduce evidence, subpoena witnesses, and conduct depositions, and to submit certain fact issues for resolution by a jury. If a party is aggrieved by an order of the Tax Court, the party may then seek judicial review in an appropriate circuit court. Tax–Gen. § 13–532.

Health Occ. § 1–213 only applies in the case of an "undisputed" tax liability. Therefore, the statute only applies to those licensees who have either exhausted their procedural rights and lost or waived their rights to a hearing to contest their tax liability. Because the operative fact is an undisputed tax liability, any party aggrieved by the non-renewal provisions of Health Occ. § 1–213 will have been provided notice and an opportunity for a hearing to dispute liability. No

---

(2) "Tax collector" includes:
    (i) the Comptroller;
    (ii) the Department, with respect to:
    1.   the financial institution franchise tax; and
    2.   the public service company franchise tax; and
    (iii) the register of wills, with respect to the inheritance tax.

additional hearing is necessary. Moreover, to provide for a hearing before the State Board of Dental Examiners would necessarily imply that the Board could somehow adjudicate a tax dispute or decide to grant a license renewal despite the undisputed outstanding tax liability, which Health Occ. § 1–213 specifically prohibits.

Here, Knoche does not dispute that he has not filed an income tax return since 1980. In fact, in his brief, Knoche noted that his current tax obligation, including interest and penalties, for the decade of the 1980s likely exceeds $280,000. Nor does he dispute that he was provided notice and an opportunity to dispute in the Maryland Tax Court his tax liability for each of the years he failed to pay taxes. The statute affords all the process due to a licensee.

## II. Substantive Due Process

Knoche contends that the non-renewal of his dental license effectively constitutes a revocation or suspension, which, under Health Occ. § 4–318, entitled him to a hearing before the Board concerning his competence as a dentist, and his good moral character and sound judgment. In other words, he claims that Health Occ. § 1–213 denies him substantive due process because the statute is not rationally related to the State's legitimate interest in assuring quality dental care to its citizenry.

Health Occ. § 1–213 does not apply to a suspect classification and does not impinge upon a fundamental right. Therefore, it will be upheld so long as it is rationally related to a legitimate government purposes. *See Hunter v. State,* 110 Md.App. 144, 161, 676 A.2d 968 (1996) (concluding that the practice of midwifery, like the practice of medicine, is not a fundamental right and therefore, subject to rational basis review). We will uphold a statute so long as it is rationally related to any legitimate state interest. *See F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) (stating that "those attacking the rationality of the legislative classification have the burden 'to negative

every conceivable basis which might support it'" and "we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature") (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973)).

The General Assembly enacted H.B. 935 for the purposes of collecting undisputed income tax and unemployment contributions. The act was entitled "The Budget Reconciliation and Financing Act of 2003" and sought to "increas[e] various revenues, provid[e] for transfers to the general fund, and includ[ed] other miscellaneous provisions designed to mitigate the fiscal condition of the State." Maryland Department of Legislative Services, 90 Day Report, 2003 Session, Part B. The legislative history of H.B. 935 indicates that the General Assembly expected the "tax clearance for licenses" provisions to result in the collection of $10 million in past due taxes in 2004, 2005, and 2006, and $5 million in 2007 and 2008, respectively. *Id.*

The State's interest in collecting public revenues is clearly a legitimate interest, and the statute is rationally related to achieving that objective. *See Rucker v. Comptroller of Treasury*, 315 Md. 559, 567, 555 A.2d 1060 (1989) (upholding a statute, which permitted delinquent corporate taxes to be assessed against corporate officers). Requiring individuals licensed by the State to comply with the State's tax laws before renewing a license also serves the purpose of ensuring that those licensed by the State are fit to hold such licenses. Although Health Occ. § 4–315 requires a hearing before a dental license may be revoked, denied, or suspended for thirty-one enumerated reasons, including instances where the applicant or licensee "is disciplined by a court of any state or county for an act that would be grounds for disciplinary action under the [State Board of Dental Examiner's] disciplinary statutes" or "[i]s convicted of or pleads guilty or *nolo contendere* to a felony or to a crime involving moral turpitude," the General Assembly could have rationally determined that the

failure to pay an undisputed income tax obligation renders the licensee unfit to practice dentistry. Other states have upheld similar statutes on both grounds. *See, e.g., Walden v. Bd. of Registration in Nursing,* 395 Mass. 263, 479 N.E.2d 665, 670–71 (1985) (finding that a Massachusetts statute requiring all applicants for a professional license to file a sworn statement, indicating compliance with state tax laws, was rationally related to legitimate government purposes of "raising revenue and assuring that tax returns are filed" and that the failure to pay such taxes "could be treated rationally as an anti-social act demonstrating unfitness to carry on a responsible profession in which adherence to other laws is required").

## III.  Ex Post Facto

Knoche also claims that Health Occ. § 1–213, as applied, constitutes an *ex post facto* law because it provides for a retroactive punishment, namely the non-renewal of his license, which was not an applicable sanction for failure to file his tax returns at the time of his filing omission.

Article I, Section 10 of the Constitution of the United States provides, in relevant part, "No State shall ... pass any ... *ex post facto* Law." *Accord* Maryland Declaration of Rights Article 17. It is well settled that the prohibition of *ex post facto* laws " 'applies only to penal statutes which disadvantage the offender affected by them.' " *Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (quoting *Calder v. Bull,* 3 Dall. 386, 390–92, 1 L.Ed. 648 (1798)). "This includes '[e]very law that changes the punishment and inflicts a greater punishment, than the law annexed to the crime when committed.' " *Demby v. Secretary, Dep't of Public Safety & Corr. Servs.,* 163 Md.App. 47, 61, 877 A.2d 187 (2005) (quoting *Collins,* 497 U.S. at 42, 110 S.Ct. 2715 (quoting 3 Dall. 386, 390, 1 L.Ed. 648 (1798))).

Knoche did not file tax returns between 1980 and 1989. During those years, the willful failure to file a State income tax return constituted a misdemeanor, punishable "by a fine not exceeding $500 or imprisonment not exceeding 6 months

or both." Tax–Gen. § 13–1001; Md.Code of 1957 (1969 Repl. Vol.), art. 81 § 369. The State characterizes the statute as "civil" and "non-penal" in nature. On the other hand, the consequence of willfully failing to file income taxes is potentially enhanced if the resulting tax liability is not satisfied. Nevertheless, a person need not be convicted of the willful failure to file a tax return to risk forfeiture of a dental license under Health Occ. § 1–213 for failure to pay taxes. In fact, the statute does not purport to impose a sanction for the failure to file tax returns, but rather requires that a person seeking license renewal pay any undisputed taxes due at the time of the renewal. Even though Knoche may have committed a criminal act in failing to file his taxes, that is not the reason that his license is not being renewed. He can avoid the application of Health Occ. § 1–213 by simply satisfying, in a manner satisfactory to the unit responsible for collection, a tax liability that can no longer be disputed as a matter of law.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**