NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

13-P-833                                      Appeals Court

BARBARA KEWLEY <u>vs</u>.  DEPARTMENT OF ELEMENTARY AND SECONDARY EDUCATION & others.[1]


No. 13-P-833.

Suffolk. December 11, 2013. - August 22, 2014.

Present: Green, Sikora, & Milkey, JJ.


<u>License</u>.  <u>Administrative Law</u>, Agency, Judicial review, Agency's interpretation of statute.  <u>School and School Committee</u>, Professional teacher status, Appointment of personnel.  <u>School and School District</u>.  <u>Constitutional Law</u>, Police power.  <u>Due Process of Law</u>, License, Retroactive application of statute, Substantive rights. <u>Statute</u>, Retroactive application, Construction.  <u>Practice, Civil</u>, Review of administrative action, Action in nature of mandamus.


<u>Civil action</u> commenced in the Superior Court Department on August 6, 2009.

The case was heard by <u>Heidi E. Brieger</u>, J., on motions for summary judgment.


---

[1] Board of Registration in Speech-Language Pathology and Audiology, and Wachusett Regional School Committee.

Daniel O'Connor (Laura Elkayam with him) for the plaintiff.
John M. Stephan, Assistant Attorney General, for the Department of Elementary & Secondary Education.
Thomas A. Mullen for the Wachusett Regional School Committee.

SIKORA, J.  In 2009 the plaintiff, Barbara Kewley, brought suit in Superior Court against three governmental defendants: the Department of Elementary and Secondary Education (DESE); the Board of Registration in Speech-Language Pathology and Audiology (board); and the Wachusett Regional School Committee (school committee) (collectively, defendants).  She sought a declaratory judgment of her eligibility to practice speech and language therapy in public schools under the authority of her licensure from the DESE and without licensure from the board, and an affirmative injunction compelling the school committee to grant her a teacher's contract as a speech therapist.  The defendants contested those entitlements.  At the conclusion of discovery, the parties composed a statement of agreed material facts and submitted cross motions for summary judgment.  By memorandum of decision and a conforming order, a judge of the Superior Court granted full summary judgment in favor of all defendants.  Kewley has appealed.  For the following reasons, we now affirm.

Background.  1.  Early biography.  In 1981 Kewley earned a bachelor of science degree in the field of speech, language, and hearing disorders.  Also in 1981, she earned a license from the

Department of Education certifying her as an "educator" in "all levels" of "speech," "language," and "hearing disorders" (DESE license). The life of the license originally was indefinite. The Legislature subsequently renamed the Department of Education as DESE. Pursuant to the Education Reform Act of 1993, DESE has required renewal of licensure at five-year intervals. G. L. c. 71, § 38G. Kewley has continuously maintained her DESE license.

During the school year of 1981-1982, Kewley worked for the Wachusett Regional School District (Wachusett)[2] as a speech assistant providing speech and language services to its public school children. During the 1982-1983 academic year, she remained with Wachusett at the higher position of speech therapist performing similar services and overseeing an aide. In September of 1983, she resigned from that position and relocated to New Hampshire. She later returned to Massachusetts, and in 1991 sought reemployment with Wachusett.

2. Legislation. Meanwhile by St. 1982, c. 666, the Legislature on January 6, 1983, introduced a system for "the licensing of persons engaged in the practice of speech-language pathology and audiology" (act), effective immediately. The legislation created the board, with authority to set and to

---

[2] Wachusett administers the public schools in the towns of Holden, Paxton, Princeton, Rutland, and Sterling.

enforce standards for professional qualification, see G. L. c. 13, §§ 85-87, and G. L. c. 112, § 139; and to exercise the power of licensure, G. L. c. 112, § 140.

The act itself prescribed, among other requirements for a license applicant, (1) a bachelor's degree and a master's degree in the area of speech-language pathology and audiology from a certified institution; (2) completion of a period of supervised professional practice; and (3) passage of an examination approved by the board. G. L. c. 112, § 144. The act mandated that "[a]ll persons" then "actively engaged in the practice of speech-language pathology and audiology in the commonwealth shall apply for a license" from the board within one year from its effective date. St. 1982, c. 666, § 4. The act prohibited any person to "hold himself out as a speech-language pathologist or practice speech-language pathology"[3] without licensure by the board. G. L. c. 112, § 146, inserted by St. 1982, c. 666, § 2.

The act created two exemptions from these general requirements. One was a so-called "safe harbor" provision excepting from the board licensure requirements "the activities and services" of four classes of individuals: (1) "a qualified person licensed in the commonwealth under any other law . . . engaging in the profession or business for which [s]he is

---

[3] We interpret the term "speech-language pathology" as equivalent to "speech-language therapy" and "speech therapy" for purposes of this case.

licensed, including activities and services by a physician licensed to practice medicine and surgery and by a person employed by and under the direct supervision of such physician"; (2) persons engaged in the "specialty of hearing aid fitting and sales" and charging no separate fees for hearing testing or interpretation of such tests; (3) teachers of esophageal speech, certified industrial audiometric technicians or audiometric screening technicians engaged in no other practice of speech-language pathology or audiology; and (4) persons participating in the prerequisite activities (degree work, practical training experience, or examination performance) for board licensure eligibility.  G. L. c. 112, § 145(1)-(4), inserted by St. 1982, c. 666, § 2.

The other exemption authorized an alternate or "grandfathering" pathway to licensure for applicants "actively engaged in the practice" of speech-language pathology and audiology in Massachusetts, "upon proof of professional practice satisfactory to the board."  St. 1982, c. 666, § 3.  Those individuals would have to apply within a one-year limit set for all active practitioners.  St. 1982, c. 666, § 4.

In April of 1986, the Legislature added a final grandfathering provision.  Any person possessing licensure for the practice of speech-language pathology or audiology from the DESE who had applied to the board for licensure on or before

August 1, 1985, would receive a waiver of the master's degree requirement so long as he or she had engaged actively in practice in Massachusetts for a period of one continuous year between January 7, 1983 (the date of the original statutory effect), and June 30, 1985.  St. 1986, c. 19, § 1.

3.  Later biography.  When Kewley sought reemployment at Wachusett in 1991, its director of special education advised her of her lack of board licensure.  By correspondence in August of 1992, the board informed her that she did not then qualify for any statutory exemption or waiver of its eligibility requirements.  Nonetheless she did work for Wachusett as a speech therapist during 1992 and into 1993, and again from early 1996 through 1999.[4]

Since 2000, Wachusett has defined Kewley's position as "speech assistant" and has withdrawn her from certain functions usually performed by a speech therapist, including supervision of an assistant, formal testing of students, conduct of student evaluations, determination of special needs and of dismissal from special education services, and formal consultation with parents and staff.  During that period, Wachusett has paid Kewley as a nonunion employee at an hourly rate.  It has

---

[4] From mid-1993 to mid-1995, Kewley resided in New York State as a result of her husband's employment there.

withheld a contractual salaried arrangement typically extended to its speech therapists.

From 2005 through 2007, Kewley sought licensure from the board. It denied the application for lack of a qualifying master's degree and for failure to pursue the alternate pathway of equivalent competence within the first year of the board's existence.[5] Since 2000, Wachusett has required its speech therapists to hold licenses from both DESE and the board.

Analysis. On appeal Kewley maintains that the safe harbor provision of the 1983 legislation provides her with licensure to practice speech therapy in public school systems under authority of her DESE certification, that a contrary interpretation of the statute retroactively deprives her of an occupational interest protected by due process principles, and that her qualification as a speech therapist entitles her to an employment contract from Wachusett.

1. Standard of review. From the same record viewed by the motion judge, we review a grant of summary judgment de novo. Miller v. Cotter, 448 Mass. 671, 676 (2007). In an appeal resulting from cross motions, the court examines the record in the light most favorable to the losing party. See, e.g., DiLiddo v. Oxford St. Realty, Inc., 450 Mass. 66, 70 (2007);

---

[5] The record indicates that the board has granted Kewley a lesser license as a "speech-language pathology assistant."

McLaughlin v. Berkshire Life Ins. Co. of America, 82 Mass. App. Ct. 351, 353-354 (2012). We may consider all grounds visible in the record and supportive of affirmance, even though the parties and the motion judge may not have relied upon them. See Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991); GTE Prod. Corp. v. Stewart, 421 Mass. 22, 36 (1995). Issues of law, such as statutory construction and the application of constitutional standards, are especially suited for summary disposition and de novo review. See Atlanticare Med. Center v. Commission of the Div. of Med. Assistance, 439 Mass. 1, 6 (2003); Norfolk & Dedham Mut. Fire Ins. Co. v. Morrison, 456 Mass. 463, 467 (2010).

2. Statutory construction. a. Safe harbor provision. Kewley contends that the language of the safe harbor provision preserves her DESE license as authority for continued practice as a speech therapist in the public schools. She relies specifically upon the proviso that the newly created board "shall not prohibit the activities and services of . . . a qualified person licensed . . . under any other law from engaging in the profession or business for which he is licensed." G. L. c. 112, § 145. She reasons that her preexisting DESE license to practice speech therapy in public schools comprises such a protected profession. By literal analysis of the legislative scheme, the motion judge rejected

that contention.  Both the letter and the apparent purpose of the legislation support the judge's conclusion and the consistent position of the board.[6]

Literal inspection of the safe harbor provision supports the narrower view of its exemption.  As examples of excepted "activities and services," the Legislature enumerated (1) physicians providing therapy adjunct to their practice already regulated by a separate professional board; (2) persons selling and fitting hearing aids so long as they made no charge for the activity, an evident characteristic of the incidental and limited nature of the permitted activity; and (3) esophageal speech teachers and certified audiometric technicians for whom therapeutic services, again, would be subordinate to their primary work.  As both the board and the school committee point out, those activities share a nature only incidentally overlapping with the delivery of speech therapy.

By contrast, the provision of services to public school children pursuant to the DESE license consists primarily of therapeutic activity, and not merely the secondary provision of therapeutic service.  The ensuing itemized exceptions of the safe harbor provision support the motion judge's view of the

---

[6] As we discuss infra, the board by its communication with Kewley in 1992 and 2007 maintained the view that the legislation limited her means of obtaining a license to the lost grandfathering opportunities, or full compliance with the 1983 requirements.

opening term "qualified person" to mean a person engaged in the provision of speech therapy as conduct incidental or subordinate to a separate service. See Boston Assn. of Sch. Administrators & Supervisors v. Boston Retirement Bd., 383 Mass. 336, 341 (1981) (general statutory term will absorb character of its more specific associated terms under canon of noscitur a sociis).

b. Grandfather provision. The two grandfather provisions furnish additional literal support for the narrower range of the safe harbor language. The 1983 provision for alternate licensure by independent demonstration of competence "satisfactory to the board" would afford DESE licensees a separate pathway to continued practice. St. 1982, c. 666, § 3. More telling, the 1986 waiver of the master's degree requirement for DESE licensees practicing for one continuous year during the first thirty months of the board's existence serves the same purpose. Neither accommodation, especially the 1986 measure, would be necessary for DESE licensees if they already enjoyed anchorage in the safe harbor provision.

The inclusion of DESE licensure in the safe harbor would render the entire 1986 act, in particular, redundant. That interpretation would violate the canon forbidding the treatment of even words and phrases of legislation as superfluous. See, e.g., Negron v. Gordon, 373 Mass. 199, 205 (1977), and cases cited; Casa Loma, Inc. v. Alcoholic Bevs. Control Commn., 377

Mass. 231, 234 (1979); Commonwealth v. Millican, 449 Mass. 298, 300 (2007). Additionally the targeted particularity of the 1986 act is more persuasive than the generality of the 1983 safe harbor provision. If two statutes address the same subject, the application of a later and more specific one will resolve any arguable ambiguity or inconsistency between the two. See, e.g., Clancy v. Wallace, 288 Mass. 557, 564 (1934); Doe v. Attorney Gen., 425 Mass. 210, 215 (1997); Silva v. Rent-A-Center, Inc., 454 Mass. 667, 671 (2009).

c. Legislative purpose. If we widen the lens to examine the over-all design and purpose of the licensure legislation, the literal interpretation gains reinforcement. See, e.g., Roberts v. Enterprise Rent-A-Car Co. of Boston, 438 Mass. 187, 194 (2002) (interpretation should produce "internal consistency"); Boston Police Patrolmen's Assn. v. Police Dept. of Boston, 446 Mass. 46, 50 (2006) (interpretation should assess entire structure and purpose of legislation). The 1983 adoption purposefully creates a comprehensive licensing system. It establishes an agency dedicated to regulation of the practice of an emerging health service; it directs that "[a]ll persons" engaged in its practice must apply for licensure from that agency; and it forbids any person to "hold himself out" as a practitioner without the board's certification. As the board points out, the remedial exercise of the police power for a

public health purpose usually receives liberal interpretation. See Kvitka v. Board of Registration in Med., 407 Mass. 140, 143, cert. denied, 498 U.S. 823 (1990). The inferable purpose of such public health legislation is the assurance of professional competence by a central agency's administration of coherent, uniform standards. The operation of multiple licensing sources and standards would undermine the objective of clear and reliable qualifications.[7]

d. Agency view. Finally, the views of an agency charged with the administration of a statutory scheme are entitled to respect so long as they are reasonable, Boston Retirement Bd. v. Contributory Retirement Appeal Bd., 441 Mass. 78, 82 (2004), especially if they arose early in the life of the statute and have remained consistent, see Board of Educ. v. Assessor of Worcester, 368 Mass. 511, 515-516 (1975); Taylor v. Housing Appeals Comm., 451 Mass. 149, 154 (2008). In this instance, the board has steadily interpreted the statutes to limit Kewley's eligibility to the enumerated prerequisites (educational degrees, practice, examination) or timely fulfillment of the grandfathering options. It maintained those positions by

_____

[7] We have considered Kewley's proposal that the 1986 waiver aims to assist only those DESE licensees wishing to expand their practice beyond the confines of public school services and leaves in place the remaining teachers. However, that view presumes existing protection from the safe harbor provision and receives no support from the letter and policy of either the 1983 or 1986 legislation.

correspondence with her in August of 1992 and by denial of an application in 2007.

3. Due process claims. Kewley contends that the board's enforcement of the 1983 licensure requirements results in a de facto revocation of her DESE license in violation of due process standards under both the Fourteenth Amendment of the Federal Constitution and art. 12 of the Massachusetts Declaration of Rights.

As a matter of substantive due process principles under both constitutions, an occupational license constitutes a protected interest. See Blue Hills Cemetery, Inc. v. Board of Registration in Embalming & Funeral Directing, 379 Mass. 368, 372 (1979), citing McMurdo v. Getter, 298 Mass. 363, 365-366 (1937) ("the right to engage in any lawful occupation is an aspect of the liberty and property interests protected by the substantive reach of the due process clause of the Fourteenth Amendment to the United States Constitution and analogous provisions of our State Constitution"); Walden v. Board of Registration in Nursing, 395 Mass. 263, 271 (1985) ("right to work as a nurse is protected against deprivation without due process of law"), and cases cited. See, e.g., Matter of Kenney, 399 Mass. 431, 436 (1987) (attorney's license); Goldstein v. Board of Registration of Chiropractors, 426 Mass. 606, 613 (1998) (chiropractor's license); Lindsay v. Department of Social

Servs., 439 Mass. 789, 803 n.12 (2003) (day care provider's license). Substantive due process requires the government to establish a rational basis for the deprivation or the diminution of such licensure. See Williamson v. Lee Optical of Okla., Inc., 348 U.S. 483, 488 (1955); Walden v. Board of Registration in Nursing, supra. The governmental action must reasonably serve a legitimate purpose of the public health, safety, or welfare. Leigh v. Board of Registration in Nursing, 395 Mass. 670, 683 (1985), S.C., 399 Mass. 558 (1987), and cases cited.

In cases of retroactive regulation of vested property interests, substantive due process will hinge on the balance of three considerations: the nature of the public interest served by the regulation; the nature of the right or protected interest divested or diminished by the regulation; and the extent or scope of the regulatory effect or impact. See American Mfrs. Mut. Ins. Co. v. Commissioner of Ins., 374 Mass. 181, 191 (1978); Leibovich v. Antonellis, 410 Mass. 568, 577 (1991), and cases cited; Carleton v. Framingham, 418 Mass. 623, 631 (1994). See also Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv. L. Rev. 692, 697 (1960).

By this calculus, the 1983 legislation displaced Kewley's existing license but did not do so unconstitutionally. The purpose of the new licensure system lay well within the police power: to assure competence or to elevate competence in the

practice of a public health care profession.  The affected interest was substantial:  an earned permit to pursue a livelihood of service and compensation.

The decisive third consideration is the extent of the Legislative displacement.  The scheme here included critical, equitable accommodations:  the original 1983 grandfathering alternative pathway to licensure by separate proof of competence; and the 1986 waiver of the master's degree requirement.  Both were available to Kewley and similarly situated DESE licensees.  She was practicing at Wachusett from January through August of 1983, an eight-month interim during which the alternate pathway was open.  She was residing in Massachusetts and the neighboring state of New Hampshire through the thirty-month period from January of 1983, through June of 1985, during which the 1986 act allowed DESE licensees to achieve a waiver of the master's degree requirement by means of one year of continuous practice.  She did not take advantage of either alternative.  Those grandfathering mechanisms of the legislation prevented unreasonable retroactivity and therefore unconstitutional deprivation of a vested professional licensure.

4.  <u>School committee's standards for contractual employment</u>.  The school committee presents an additional distinctive and valid defense.  The provision authorizing licensure by DESE, G. L. c. 71, § 38G, as appearing in St. 1983,

c. 495, § 26, states in relevant part, "No person shall be eligible for employment as a teacher . . . unless [s]he has been granted by the commissioner a . . . standard certificate with respect to the type of position for which [s]he seeks employment; provided, however, that nothing herein shall be construed to prevent a school committee from prescribing additional qualifications."  It is undisputed that since approximately 2000 Wachusett has required teachers of speech-language therapy to possess both the DESE license and the board license.

Wachusett's exercise of that lawful discretionary authority (by the school committee or administrators) is immune from any requested affirmative injunctive order compelling the issuance of a contract to Kewley.  A Massachusetts court may not "mandamus" discretionary governmental action.  See McLean v. Mayor of Holyoke, 216 Mass. 62, 64-65 (1913); Berman v. Board of Registration in Med., 355 Mass. 358, 360 (1969); Urban Trans., Inc. v. Mayor of Boston, 373 Mass. 693, 698 (1977), and cases cited.

Judgment affirmed.